# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

David Randall Jenkins,          )
                Plaintiff,          )
vs.          )
Southwest Gas Corp., *et al.,*          )
               Defendants.          )
_____)

CV-09-382-TUC-JMR (JCG)

**REPORT & RECOMMENDATION**

Pending before the Court is a Motion to Dismiss filed pursuant to Rule 12(b)(6), Fed. R. Civ. P., by Defendants Arizona Pipeline, Jose L. Cota and Art Heady (collectively, "APL") on August 10, 2009. (Doc. No. 13.) Defendants Southwest Gas Corp. ("SWG"), NPL Construction ("NPL"), Scott A. Krasner, Philip G. Glennie, George Manny, Ron Sorich, Marc Fenn, Bill Meyers, Jose Caballero, Jr., One Call Locators and Michael Norman have joined in the Motion. (Doc. Nos. 39, 43, 80 & 101.) Plaintiff filed a response on August 24, 2009. (Doc. Nos. 30-32.) APL filed a reply on September 2, 2009. (Doc. No. 35.)

Pursuant to the Rules of Practice in this Court, the matter was assigned to Magistrate Judge Guerin. Because the parties have not yet consented to the jurisdiction of the Magistrate, review of this Report & Recommendation was randomly assigned to United States District Court Judge Roll. The Magistrate Judge declined to hear oral argument in this matter. *See Mahon v. Credit Bureau of Placer County, Inc.,* 171 F.3d 1197, 1200 (9th Cir. 1999) (explaining that if the parties provided the district court with complete memorandum of law and evidence in support of their positions, ordinarily oral argument

would not be required). After review, the Magistrate Judge recommends the District Court, after its independent review of the record, enter an order granting Defendants' Motion.

## FACTUAL AND PROCEDURAL BACKGROUND

On July 8, 2009, Plaintiff filed a Complaint in the United States District Court, District of Arizona, alleging claims against 22 named Defendants. The Complaint, which is 79 pages long and comprised of 355 paragraphs, appears to arise from an injury Plaintiff sustained on the job while employed by NPL, the resulting worker's compensation claim filed by Plaintiff, and Plaintiff's ultimate termination from his employment. (Doc. No. 1, pgs. 29-30; 31-39, 44, 51-57.) The Complaint also includes, however, lengthy and confusing allegations related to the United States' capital markets and a group that Plaintiff refers to as the Informal Capital Market Cartel ("ICMC"), which allegedly exercises secret control over these markets. (*Id*., pg. 10.) Plaintiff alleges that the United States Supreme Court is engaged in a secret war with the ICMC and, in furtherance of this war, the United States Supreme Court sends Plaintiff "informal information signals" via various stock market indexes. (*Id*., pgs. 10-13.) Plaintiff alleges that the ICMC has been responsible for the attempted assassination of former President Reagan, the siege against the Branch Davidian Compound, the corruption of various members of the judiciary, the murder of Plaintiff's family members and Plaintiff's own incarceration (*Id*. at 10, 13, 14-19). In addition, Plaintiff's Complaint includes unintelligible allegations regarding an alleged racketeering enterprise controlled by SWG, various Defendants' involvement in extortion by mail and wire communications, various employers' threats against Plaintiff and an "economic disincentive program" and "blacklisting scheme" involving NPL and APL which the Arizona Industrial Commission has failed to proscribe. (*Id*. at 26, 41, 45-49, 50, 59-60.)

Plaintiff's Complaint alleges seven counts for relief: (1) declaratory relief pursuant to 28 U.S.C. §§ 2201-2202; (2) violation of 42 U.S.C. § 1983; (3) racketeering in violation of 18 U.S.C. § 1964(c); (4) racketeering in violation of A.R.S. § 13-2314.04; (5) wrongful termination in violation of A.R.S. § 23-1501(3)(c)(iii); (6) "bad faith;" and (7) intentional interference with an advantageous employment relationship. (Doc. No. 1, pgs. 61-79.)

2

On August 10, 2009, APL moved to dismiss Plaintiff's Complaint pursuant to Rule 12(b)(6), Fed. R. Civ. P., arguing that Plaintiff had failed to state a claim upon which relief could be granted. (Doc. No. 13.) Defendants SWG, NPL, Krasner, Glennie, Manny, Sorich, Fenn, Myers and Cabellero joined in the Motion. (Doc. Nos. 39, 43 & 80.) On September 4, 2009, SWG and NPL filed a Motion for More Definite Statement, arguing that if Plaintiff's Complaint survived APL's Motion to Dismiss, Defendants should not be required to try answer. (Doc. No. 38.) On September 8, 2009, Defendants Krasner and Glennie filed additional motions to dismiss Counts 2 & 3 of Plaintiff's Complaint pursuant to Rule 12(b)(6). (Doc. Nos. 44 & 45.) The Magistrate Judge determined that early case management of the case was required in order to ensure the just, speedy and inexpensive determination of this action pursuant to Rule 1, Fed. R. Civ. P. On September 14, 2009, the Magistrate Judge issued an Order staying the case pending subsequent Order of the Court. (Doc. No. 97.)

## STANDARD OF REVIEW

To survive a Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted, "factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true even if doubtful in fact." *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955, 1965 (2007) (citations and internal quotations omitted). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 1964 (citations and internal quotations omitted). "[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Id.* at 1968 (abrogating a literal reading of *Conley*, 355 U.S. at 45-46). Dismissal is appropriate under Rule 12(b)(6) if the facts alleged do not state a claim that is "plausible on its face." *Id.* at 1973. When assessing the sufficiency of the complaint, all factual allegations are taken as true and construed in the light most favorable to the nonmoving party, *Iolab Corp. v.*

*Seaboard Sur. Co.*, 15 F.3d 1500, 1504 (9th Cir.1994), and all reasonable inferences are to be drawn in favor of that party as well. *Jacobsen v. Hughes Aircraft*, 105 F.3d 1288, 1296 (9th Cir.1997).

## DISCUSSION

APL Defendants contend that they are entitled to dismissal of Plaintiff's complaint because Plaintiff has failed to state any claims upon which relief can be granted pursuant to Rule 12(b)(6), Fed. R. Civ. P. The Court agrees that Plaintiff has failed to properly plead the Counts of his Complaint as required by the Federal Rules.

**1. Plaintiff has failed to state a claim for declaratory relief pursuant to 28 U.S.C. §§ 2201-2202.**

The Declaratory Judgment Act permits the federal court to, "[i]n a case of actual controversy within its jurisdiction ... declare the rights and other legal relations of any interested party seeking such declaration." 28 U.S.C. §§ 2201; *see also* 28 U.S.C. § 2202. The Act "provides a procedure empowering a federal court to declare the legal rights and obligations of adversaries engaged in a justiciable controversy" and enables parties uncertain of their legal rights to seek a declaration of right prior to injury. *Kunkel v. Continental Cas. Co.*, 866 F.2d 1269, 1273 (10th Cir. 1989). The Declaratory Judgment Act is designed to aid a potential defendant in avoiding the "Damoclean threat" of acting and risking liability under federal law before an action can accrue. *National Basketball Ass'n v. SDC Basketball Club, Inc.*, 815 F.2d 562 (9th Cir. 1987).

Plaintiff's Complaint fails to state a claim for declaratory relief. Plaintiff has failed to allege that he is engaged in a justiciable controversy with Defendants such that Plaintiff must either obtain a declaration of his rights or risk exposing himself to liability. Plaintiff's Complaint appears to seek a judgment from this Court declaring that: (1) state agencies have a duty to promulgate regulations to safeguard the rights of workers; (2) the Arizona Industrial Commission ("the Commission") failed to promulgate required regulations; (3) various defendants adopted "workers' compensation economic disincentive programs and blacklisting schemes" in violation of workers' due process rights; (4) Defendants APL and American Zurich Insurance Company ("Zurich") acted in bad faith in administering APL's

4

"workers' compensation economic disincentive programs and blacklisting schemes;" and (5) public policy demands APL and Zurich rebut a presumption of bad faith with clear and convincing evidence.  (Doc. No. 1, pgs. 61-63.)  These allegations are essentially re-statements of Plaintiff's other claims for relief.  Plaintiff appears to be asking the Court for an Order declaring his allegations to be true.  The Declaratory Relief Act was not designed to serve this purpose.  Accordingly, the Magistrate Judge recommends that Count 1 of Plaintiff's Complaint be dismissed pursuant to Rule 12(b)(6), Fed. R. Civ. P.

**2.      Plaintiff has failed to state a claim for relief pursuant to 42 U.S.C. § 1983.**

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege that he was deprived of a federal right by a person acting under color of state law.  *See Dooley v. Reiss*, 736 F.2d 1392, 1394 (9th Cir. 1984).

Plaintiff's Complaint alleges that he was deprived of "substantive rights" when (1) Defendants SWG, APL, Sorich, Fenn, Manny, Meyers, Caballero, NPL, Heady, Cota, Norman, Zurich, Alison, Krasner and Glennie created and/or controlled a "workers' compensation economic disincentive program and blacklisting scheme," and (2) the Commission and its Commissioners refused to enter a timely award in a claim filed by Plaintiff with the Commission.  (Doc. No. 1, pgs. 63-64.) These allegations do not state a claim under 42 U.S.C. § 1983.

First, Defendants SWG, APL, Sorich, Fenn, Manny, Meyers, Caballero, NPL, Heady, Cota, Norman, Zurich, Alison, Krasner and Glennie are private entities or individuals, not state actors.  A private party or entity acts under color of state law where there is significant state involvement in the action.  *See Lopez v. Department of Health Services*, 939 F.2d 881, 883 (9th Cir. 1991).  Plaintiff has failed to adequately allege any rational connection between these individual defendants and a governmental entity.[1]

---

[1] The Commission and its Commissioners may qualify as state actors under certain circumstances, but Plaintiff has failed to state a 42 U.S.C. § 1983 claim against them because he has not adequately alleged a deprivation of a federal right resulting from the Commission or Commisioners' actions.  In addition, the Court notes that Plaintiff's allegation that he was deprived of substantive rights when the Commission and Commissioners refused to enter a timely award in a claim filed by Plaintiff because the Commission was accepting bribes from the

Second, Plaintiff has failed to allege a deprivation of a federal right. Instead, Plaintiff alleges generally that he was deprived of "substantive rights." "[B]are assertions ... amount[ing] to nothing more than a formulaic recitation of the elements" are insufficient to survive a Rule 12(b)(6) Motion to Dismiss. *See Moss v. U.S. Secret Service*, 572 F.3d 962, 969 (9th Cir. 2009) (citing *Ashcroft v. Iqbal*, --- U.S. ----, 129 S.Ct. 1937, 173 (2009)). Moreover, the Court cannot infer the nature of the "substantive rights" of which Plaintiff was deprived, even through a close reading of the Complaint. Plaintiff's Complaint is essentially unintelligible, as explained more fully in Section 7 of this Report & Recommendation. In addition, the damages alleged by Plaintiff – lost earnings, lost reputation, loss of enjoyment of life and financial hardship – do not appear linked to the conduct of the Defendants. (Doc. No. 1, pgs. 64-65.) Accordingly, the Magistrate Judge recommends that Count 2 of Plaintiff's Complaint be dismissed pursuant to Rule 12(b)(6), Fed. R. Civ. P.

**3.     Plaintiff cannot state a civil law claim for racketeering in violation of 18 U.S.C. § 1964(c) and/or A.R.S. § 13-2314.04.[2]**

18 U.S.C.A. § 1964(c) ("RICO") creates a civil cause of action for "any person injured in his business or property by reason of a violation of section 1962" (the criminal RICO statute). Thus, to state a civil claim under RICO, a plaintiff must plead two main allegations: (1) that the defendant violated the Act, and (2) that the plaintiff was injured as a result of the violation. *See* 18 U.S.C.A. § 1964(c). In order to demonstrate that a defendant has violated the Act, a plaintiff must allege: "(1) that the defendant [a 'person'] (2) through the commission of two or more acts (3) constituting a 'pattern' (4) of 'racketeering activity' (5) directly or indirectly invests in, or maintains an interest in, or participates in (6) an

---

ICMC does not amount to "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged" as required by *Moss v. U.S. Secret Service*, 572 F.3d 962, 969 (9th Cir. 2009) (citing *Ashcroft v. Iqbal*, --- U.S. ----, 129 S.Ct. 1937, 173 (2009)) and as discussed more fully in Section 8 of this Report & Recommendation.

[2] The Arizona RICO statutes provide a civil cause of action and are analogous to their federal counterpart. *Rosier v. First Financial Capital Corp.*, 889 P.2d 11, 14 n.5 (Ariz. App. 1994).

'enterprise' (7) the activities of which affect interstate or foreign commerce."[3] *See 5* Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 1251.1 (2009).

To the extent the Court is able to decipher Plaintiff's Complaint, it appears that Plaintiff intends to allege that each Defendant named in his Complaint participated in a racketeering enterprise established by SWG and designed to wrongfully influence state regulators, promote "workers' compensation economic disincentive programs and blacklisting schemes," and "wrongfully influence capital market assessment of its industry," through a variety of criminal acts including mail and wire fraud, extortion and bribery. (Doc. No. 1, pgs. 65-71.) Plaintiff alleges injury in the form of "a scheme to defraud Plaintiff of his property rights in his NPL employment and his property rights in his February 5, 2008 workers' compensation claim." *See id.* For numerous reasons, Plaintiff's Complaint fails to state a RICO claim.

First, although Plaintiff apparently intends to allege his RICO claims against all Defendants, he has failed to articulate how each of the Defendants was involved in a pattern of racketeering activity. "[C]riminal conduct forms a pattern if it embraces criminal acts that have the same or similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events." *See Schreiber Distributing Co. v. Serv-Well Furniture Co., Inc.*, 806 F.2d 1393, 1399 (9th Cir. 1986). Instead, Plaintiff's Complaint is replete with references to various and unrelated alleged misdeeds by various Defendants. For example, Plaintiff alleges that SWG "caused industry employers to employ impermissible risk management practices." (Doc. No. 1, pg. 65-66.) Plaintiff also alleges that NPL violated criminal mail/wire fraud and extortion statutes by "using economic disincentives to chill the vindication of workers' compensation claims," retaliating against Plaintiff for filing a worker's compensation claim and wrongfully terminating Plaintiff. (Doc. No. 1, pgs. 65-71.) Plaintiff alleges that Zurich violated criminal mail/wire fraud and extortion statutes by aiding NPL in promoting a workers' compensation

---

[3] A plaintiff may also state a RICO claim by alleging that a defendant conspired to commit the seven acts required to show a violation of RICO. *See* 18 U.S.C. § 1962(d). In the present case, however, Plaintiff's Complaint does not contain allegations of a RICO conspiracy.

disincentive program. (Doc. No. 1, pg. 69.) Plaintiff alleges that Glennie and Krasner violated criminal mail/wire fraud and extortion statutes by failing to timely disclose Plaintiff's medical records. (Doc. No. 1, pg. 69.) Plaintiff alleges that the Commission and its Commissioners violated criminal bribery, mail/wire fraud and extortion statutes by obstructing the promulgation of regulations proscribing employer workers' compensation economic disincentive programs and blacklisting schemes and refusing to enter a timely award with respect to a claim filed by Plaintiff. (Doc. No. 1, pg. 70.) Plaintiff does not make any RICO-claim allegations related to Defendants Cota, Heady, One Call Locators or Norman.

Second, to the extent Plaintiff alleges that the racketeering activity at issue was fraudulent in nature, he has failed to plead such claims with specificity. "Racketeering activity" is defined in 18 U.S.C. § 1961(1)(B) as including any act "indictable" under certain enumerated federal criminal statutes, including 18 U.S.C. § 1341, which makes mail fraud a criminal offense, and 18 U.S.C. § 1343, which makes wire fraud a crime. *See Schreiber Distributing Co. v. Serv-Well Furniture Co., Inc.*, 806 F.2d 1393, 1399 (9th Cir. 1986). Plaintiff must plead such fraudulent activity with specificity as required by Rule 9(b), Fed. R. Civ. P. *See Allwaste, Inc. v. Hecht*, 65 F.3d 1523, 1530 (9th Cir. 1995). The Court cannot discern, based on its review of Plaintiff's Complaint, the time, place or manner of any of the alleged frauds, nor can it identify the role of each defendant in the scheme. In fact, it is unclear how the mail and wire systems were involved in the alleged fraudulent conduct at all.

Third, with respect to alleged criminal violations other than wire/mail fraud, Plaintiff has failed to plead facts which would support his allegations that Defendants engaged in criminal conduct amounting to "racketeering activity." For example, Plaintiff alleges that various Defendants committed extortion in violation of 18 U.S.C. § 1951; that statute requires a showing that Defendants obtained Plaintiff's property with his consent through the use of actual or threatened force, violence, or fear, or under color of official right. The only property Plaintiff claims to have lost is his employment with NPL, and Plaintiff never alleges

that his employment was given up with his consent. To the contrary, Plaintiff alleges that he was wrongfully terminated. In addition, Plaintiff alleges that Defendants violated 18 U.S.C. § 1952 (the Travel Act), but fails to specify how and which Defendants used interstate commerce to distribute the proceeds of unlawful activity, as that statute requires. Similarly, Plaintiff alleges that the Commission and Commissioners committed violations of criminal bribery and trading in public office laws with the assistance of ICMC, but fails to offer more than conclusory allegations with respect to these alleged violations.

Fourth, Plaintiff fails to allege how each Defendant directly or indirectly invests in, maintains an interest in, controls or directs the "enterprise" at issue.[4] An "enterprise" includes any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity. *See* 18 U.S.C. § 1961(4). Plaintiff alleges that the enterprise at issue in this case is the "SWG racketeering enterprise," through which SWG wrongfully influences state regulators, employs impermissible risk management practices and causes other employers such as NPL and APL to employ impermissible risk management practices. (Doc. No. 1, pg. 65.) According to Plaintiff, SWG directs the enterprise for the purpose of "achieving levels of non-equity diluting capital market natural gas property infrastructure and working capital financing through capital market sources it would not otherwise be able to achieve." (Doc. No. 1, pg. 66.) Given that Plaintiff alleges that SWG controls the enterprise and the conduct of other employers such as NPL and APL, it is difficult to comprehend how the other Defendants invest in, maintain an interest in, direct or control the enterprise. The Complaint does not

---

[4] 18 U.S.C. § 1962 establishes three ways a person can be a participant in an enterprise: using or investing the income of the enterprise (18 U.S.C. § 1962(a)); acquiring or maintaining control over an enterprise (18 U.S.C. § 1962(b)); or conducting or participating in the affairs of the enterprise (18 U.S.C. § 1962(c)). To "participate, directly or indirectly, in the conduct of such enterprise's affairs, as required by 18 U.S.C. § 1962(c), one must have some part in directing those affairs." *Reves v. Ernst & Young*, 507 U.S. 170, 179 (1993).

allege facts demonstrating that Defendants invest in, gain an interest in, operate or manage the enterprise.[5]

Finally, Plaintiff has not alleged an injury which gives him standing to bring a RICO claim. The only injury that Plaintiff has alleged in relation to the racketeering activities is the loss of his employment at NPL.[6] Plaintiff alleges that he was wrongfully terminated by NPL. However, a plaintiff lacks standing to pursue a RICO claim when the injury he suffered was the result of his alleged wrongful termination and was not caused by predicate RICO acts. *See Reddy v. Litton Industries, Inc.*, 912 F.2d 291 (9th Cir. 1990).

Accordingly, the Magistrate Judge recommends that Counts 3 & 4 of Plaintiff's Complaint be dismissed pursuant to Rule 12(b)(6), Fed. R. Civ. P.

**4.    Plaintiff has failed to state a claim for wrongful termination in violation of A.R.S. § 23-1501(3)(c)(iii).**

Plaintiff alleges that he was wrongfully terminated in violation of A.R.S. § 23-1501(3)(c)(iii), which prohibits employers from terminating an employee in retaliation for the exercise of workers' compensation rights. Plaintiff attempts to assert this claim against "the defendants and each of them collectively," claiming that all Defendants participated in a "scheme to wrongfully terminate Plaintiff." (Doc. No. 1, pg. 76.) However, A.R.S. § 23-1501(3)(c)(iii) does not permit a claim for "conspiracy to wrongfully terminate." Because Plaintiff only alleges an employment relationship with NPL, he has failed to state a claim for wrongful termination as to any other Defendant in Count 5 of his Complaint.

---

[5] Plaintiff's allegation that "the defendants, and each of them, directed, controlled or participated in the SWG racketeering enterprise" is merely a conclusory allegation and is insufficient under *Moss v. U.S. Secret Service*, 572 F.3d 962, 969 (9th Cir. 2009).

[6] In their Motion, APL interprets Plaintiff's Complaint as possibly including an allegation that Plaintiff was damaged by the racketeering activities because he was defrauded of his worker's compensation claim. Although Plaintiff makes vague references to worker's compensation proceedings throughout his Complaint, he never affirmatively alleges that he filed a worker's compensation claim and that it was denied despite the fact that Plaintiff was entitled to benefits. Thus, the Court does not construe the Complaint to include such an allegation.

10

**5.      Plaintiff has failed to state a claim for "bad faith" under Arizona law.**

In Count 6, Plaintiff alleges a claim for "bad faith (common law)." In this Count, Plaintiff asserts that Defendants "directed or participated in NPL's impermissible workers' compensation economic disincentive programs, proximately causing injury to Plaintiff by causing, in bad faith, unreasonable duress to Plaintiff in his enjoyment of his NPL employment and his right to vindicate his February 5, 2008 workers' compensation claims free from such tortuous conduct." (Doc. No. 1, pg. 77.) Plaintiff then incorporates by reference paragraphs 130-318 of his Complaint. These 200 paragraphs describe a variety of events ranging from Plaintiff's injury while working for NPL, his subsequent worker's compensation claim, his medical care and his ultimate termination from NPL.

Arizona common law recognizes that "there is a legal duty implied in an insurance contract that the insurance company must act in good faith in dealing with its insured on a claim, and a violation of that duty of good faith is a tort." *Noble v. National American Life Ins. Co.*, 624 P.2d 866, 868 (Ariz. 1981). To show a claim for bad faith, "a plaintiff must show the absence of a reasonable basis for denying benefits of the policy and the defendant's knowledge or reckless disregard of the lack of a reasonable basis for denying the claim. The tort of bad faith is an intentional one." *Id.* Based on a close reading of paragraphs 273-303 of the Complaint, it appears that Plaintiff intends to allege that Defendant Zurich acted in bad faith with respect to his workers' compensation claim. However, Plaintiff has not alleged that his workers' compensation claim was denied. The Complaint alleges at various times that the claim was accepted and that the claim was closed. Because Plaintiff has failed to allege that any Defendant unreasonably denied his claim for workers' compensation benefits, he has failed to state a claim for bad faith. Moreover, even if Plaintiff were to amend his Complaint to allege that benefits were denied, such a claim would have merit only against Defendant Zurich, as the alleged provider of Plaintiff's workers' compensation benefits. To the extent that Plaintiff intends to allege a bad faith claim against any other Defendants, the claim is without merit. Accordingly, the Magistrate Judge recommends that Count 6 of Plaintiff's Complaint be dismissed pursuant to Rule 12(b)(6), Fed. R. Civ. P.

**6.** **Plaintiff has failed to state a claim for intentional interference with an advantageous employment relationship.**

To establish a prima facie case of intentional interference with contractual relations, a plaintiff must prove: the existence of a valid contractual relationship or business expectancy; the interferer's knowledge of the relationship or expectancy; intentional interference inducing or causing a breach or termination of the relationship or expectancy; and resultant damage to the party whose relationship or expectancy has been disrupted. *Wallace v. Casa Grande Union High School Dist. No. 82 Bd. of Governors*, 909 P.2d 486, 494 (Ariz. App. 1995). In Count 7, Plaintiff alleges "the Defendants and each of them collectively and respectively controlled, directed or participated in blacklisting schemes undertaken with the intention to unlawfully interfere in Plaintiff's advantageous employment relationships with NPL and ELM." (Doc. No. 1, pg. 78.) Plaintiff then refers generally to paragraphs 130-318 of the Complaint. As stated in Section 5 above, those paragraphs describe a variety of events ranging from Plaintiff's injury while working for NPL, his subsequent worker's compensation claim, his medical care and his ultimate termination from NPL. Neither the Court nor Defendants are obligated to sort through over 200 paragraphs in order to discern which Defendants knew about Defendants' employment relationships, interfered with Plaintiff's employment relationships, or how the interference occurred. As described more fully in Section 7, below, Plaintiff has failed to comply with the pleadings requirements of the Federal Rules of Civil Procedure. With respect to Count 7, "no attempt is made to match up the specific factual allegations and the specific legal claims to a specific defendant. The result is that defendants and this court are literally guessing as to what facts support the legal claims being asserted against certain defendants." *McHenry v. Renne*, 84 F.3d 1172, 1177 (9th Cir. 1996). Accordingly, the Magistrate Judge recommends that Count 7 of Plaintiff's Complaint be dismissed pursuant to Rule 12(b)(6), Fed. R. Civ. P.

**7.     Plaintiff's Complaint fails to comply with the Federal Rules of Civil Procedure**.

Plaintiff's Complaint fails to comply with Rules 8 and 12 of the Federal Rules of Civil Procedure.[7]

Rule 8, Fed. R. Civ. P. sets forth the general rules of pleading.  Pursuant to Rule 8(a)(2), Fed. R. Civ. P., Plaintiff's Complaint is required to set forth a "short and plain statement of the claim showing that the pleader is entitled to relief."  Rule 8(d)(1), Fed. R. Civ. P. requires that "each allegation must be simple, concise and direct."  Plaintiff's Complaint fails to comply with Rule 8 for several reasons.  First, the Complaint is excessive in length.  Second, "no attempt is made to match up the specific factual allegations and the specific legal claims to a specific defendant."[8]  *McHenry*, 84 F.3d at 1177.  Third, in stating his claims for relief, Plaintiff refers the Court and the parties to large sections of the Complaint (for example, in paragraph 351, where Plaintiff refers generally to paragraphs 130-318), making it impossible for the Court or the parties to discern which facts give rise to the claim.

In addition, Plaintiff's Complaint is also at odds with the objectives of Rule 12, Fed. R. Civ. P., which sets forth valid grounds for defenses and objections to pleadings.  Rule 12(e), Fed. R. Civ. P. permits the Court to issue any appropriate Order necessary to correct a complaint which is "so vague and ambiguous that the [opposing] party cannot reasonably prepare a response."  Rule 12(f), Fed. R. Civ. P. permits the Court to strike from a pleading any material which is "immaterial, impertinent or scandalous."  Plaintiff's Complaint is

---

[7] The Court also directs Plaintiff's attention to Rules 9 and 84 of the Federal Rules of Civil Procedure.  As explained in Section 3, Rule 9, Fed. R. Civ. P. requires Plaintiff to plead allegations of fraud with specificity, which Plaintiff has failed to do.  In amending his Complaint, Plaintiff should be aware that "[a] heightened pleading standard is not an invitation to disregard Rule 8's requirement of simplicity, directness, and clarity."  *McHenry v. Renne*, 84 F.3d 1172, 1178 (9th Cir. 1996).  In addition, Rule 84, Fed. R. Civ. P. sets forth pleading forms which "suffice under these rules and illustrate the simplicity and brevity that these rules contemplate."

[8] This deficiency is particularly problematic because several of Plaintiff's claims are obviously related to only one or a few of the named Defendants, but are nonetheless alleged against all Defendants.  For example, Plaintiff's claim for wrongful termination is logically a claim against Plaintiff's former employer, NPL, and has no legal merit as to any other Defendant.

13

subject to both of these provisions of Rule 12, Fed. R. Civ. P. because it is comprised primarily of vague and ambiguous allegations that are both immaterial to the action and not plausible on their face.  The legitimate crux of Plaintiff's Complaint appears to be that he was injured on the job, filed a workers' compensation claim which he does not believe was processed correctly, and ultimately terminated from employment.  The expansive allegations of a secret war between the United States Supreme Court and the ICMC, regardless of their credibility, are wholly unrelated to Plaintiff's employment issues.  Likewise, Plaintiff's vague references to an "economic disincentive program" and a "blacklisting scheme" that somehow involves all 22 named Defendants leave the parties and the Court struggling to sort valid legal claims from the maze of Plaintiff's confusing allegations of a large-scale conspiracy.  Prolix, confusing complaints such as the one Plaintiff filed in this case impose unfair burdens on litigants and judges.  *See McHenry*, 84 F.3d 1179.

Finally, Rule 12(b)(6), Fed. R. Civ. P. permits dismissal of any claim upon which relief cannot be granted.  As described in the Standard of Review section above, Rule 12(b)(6) has been construed to require a plaintiff to provide "the 'grounds' of his 'entitlement to relief' [not just] labels and conclusions."  *Twombly*, 127 S.Ct. at 1964 (citations and internal quotations omitted).  Under Rule 12(b)(6), Fed. R. Civ. P., dismissal is appropriate under Rule 12(b)(6) if the facts alleged do not state a claim that is "plausible on its face." *Id.* at 1973.  The Rule 12(b)(6) standard of review imposes two obligations on Plaintiff.  First, his Complaint must contain non-conclusory factual content, rather than a "formulaic recitation of the elements."  *Moss v. U.S. Secret Service*, 572 F.3d 962, 969 (9th Cir. 2009) (citing *Ashcroft v. Iqbal*, --- U.S. ----, 129 S.Ct. 1937, 173 (2009)).  Plaintiff has failed to meet this first obligation.  On pages 61 through 79 of his Complaint, Plaintiff repeatedly engages in a formulaic recitation of the elements of his claims, without clearly identifying any facts to support those legal elements.  In addition, when Plaintiff refers to the factual content of his Complaint, the references are so overly-broad that they are not helpful to the Court.

Second, Rule 12(b)(6) requires Plaintiff to allege factual content which is "plausible," *Twombly*, 127 S.Ct at 1964, and that "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Moss v. U.S. Secret Service*, 572 F.3d 962, 969 (9th Cir. 2009) (citing *Ashcroft v. Iqbal*, --- U.S. ----, 129 S.Ct. 1937, 173 (2009)). Much of the "factual content" of Plaintiff's Complaint is not plausible and does not give rise to a reasonable inference of liability for the misconduct alleged. For example, Plaintiff's § 1983 claim requires the Court to first find it plausible that a secret society known (to Plaintiff) as the ICMC has bribed the Commissioners into refusing to regulate an economic disincentive program and blacklisting scheme promulgated by the other Defendants. Even if the Court were able to accept this allegation as true, the Court cannot reasonably infer from that allegation that the Commission and its Commissioners are therefore liable for depriving Plaintiff of his substantive rights. Similarly, Plaintiff's Complaint requires the Court to first accept as true the allegation that each of the (largely unrelated) Defendants is knowingly participating in a conspiracy to defraud Plaintiff of his property rights in his NPL employment and his workers' compensation claim. Even if the Court were to accept the conspiracy allegation as true, the Court cannot reasonably infer that the Defendants are collectively engaged in an illegal racketeering enterprise, have violated the common law tort of bad faith or have intentionally interfered with Plaintiff's employment relationship. Accordingly, the Magistrate Judge recommends that Plaintiff's Complaint be dismissed in its entirety.

**8.      Plaintiff should be granted leave to amend to the extent amendment is not futile.**

In determining whether to permit Plaintiff the opportunity to amend his Complaint, the Court considers the delay caused by repeated amended complaints, prejudice to Defendants, futility, and bad faith. *See DCD Programs v. Leighton*, 833 F.2d 183, 186 (9th Cir.1987); *Kaplan v. Rose*, 49 F.3d 1363, 1370 (9th Cir.1994). The Court finds that granting Plaintiff an opportunity to amend his Complaint would not cause undue delay in this matter. The Court also notes that Plaintiff has not previously amended his Complaint and that this is the first amendment ordered by the Court. *See Moore v. Kayport Package Exp., Inc.*, 885

F.2d 531, 538 (9th Cir.1989) (failure to cure deficiencies by previous amendments is factor to be considered). The Court does not believe that Defendants would be prejudiced by the amendment; rather, the Court finds that Defendants will benefit from an amendment which articulates Plaintiff's claims in a short, concise and understandable manner. There is no evidence that Plaintiff has acted in bad faith in filing his Complaint.

The Court notes, however, that amendment of some of Plaintiff's claims appears futile. As stated in Section 1, Plaintiff cannot state a claim for declaratory relief because there is no indication that Plaintiff is engaged in a justiciable controversy with Defendants such that Plaintiff must either obtain a declaration of his rights or risk exposing himself to liability. As stated in Section 2, most of the Defendants in this action are not state actors and therefore should not be named in a § 1983 claim. As stated in Section 3, Plaintiff's RICO claims are flawed in numerous respects that do not appear to be curable by amendment. As stated in Section 4, Plaintiff may allege a wrongful termination claim against a former employer, but of the 22 Defendants named in this action, only NPL has employed Plaintiff. Accordingly, the other 21 Defendants should not be named in Plaintiff's claim for wrongful termination. As stated in Section 5, even if Plaintiff were able to amend his Complaint to allege that his workers' compensation benefits were denied, such a claim would have merit only against Defendant Zurich, as the alleged provider of Plaintiff's workers' compensation benefits, and not any of the other Defendants in this action. Finally, as stated in Section 6, Plaintiff may state a claim for intentional interference with business relations only against those Defendants who knew of Plaintiff's employment at NPL and intentionally interfered with it. While the Magistrate Judge recommends that Plaintiff be permitted to amend his Complaint, Plaintiff should avoid inclusion of the above-referenced futile claims in future amendments. To the extent that such claims are included in an Amended Complaint, the Magistrate Judge recommends that they be stricken. Finally, Plaintiff is cautioned that repeated failures to correct noted pleading shortcomings will result in dismissal with prejudice. *See McHenry v. Renne*, 84 F.3d 1172, 1178-80 (9th Cir. 1996).

# RECOMMENDATION

The Magistrate Judge recommends the District Court, after its independent review of the record, enter an Order:

1.  GRANTING APL Defendants' Motion to Dismiss (Doc. No. 13) and DISMISSING Plaintiff's Complaint WITHOUT PREJUDICE;

2.  Permitting Plaintiff an opportunity to file an Amended Complaint that corrects the deficiencies in his original Complaint as identified by the Court and complies with the Federal Rules of Civil Procedure. Specifically, the Magistrate Judge recommends that Plaintiff be instructed to:

    a.  State specific factual allegations against proper Defendants;

    b.  Identify which Defendants participated in which activities alleged in the Complaint;

    c.  Avoid conclusory allegations and instead clearly identify the alleged facts which support each element of each count alleged;

    d.  Plead factual content that allows the Court to draw the reasonable inference that the Defendant is liable for the misconduct alleged;

    e.  State what injury, if any, Plaintiff suffered as a result of the activities of each Defendant;

    f.  Comply with the Federal Rules of Civil Procedure and the Rules of Practice of the United States District Court for the District of Arizona,[9] including:

        i.   Rule 8(a)(2), Fed. R. Civ. P., which requires a short and plain statement of the claim showing that the pleader is entitled to relief;

        ii.  Rule 8(d)(1), Fed. R. Civ. P, which requires pleadings to be concise and direct;

---

[9]The Local Rules of Practice for the United States District Court, District of Arizona are on file with the Clerk of this Court and with the Pima County Law Library. A copy of the rules may also be purchased for $35.00. Please, contact the Clerk's office with any request to purchase the Local Rules of Practice.

iii.    Rule 12(e), Fed. R. Civ. P., which permits the Court to issue any appropriate Order necessary to correct a complaint which is "so vague and ambiguous that the [opposing] party cannot reasonably prepare a response."

iv.    Rule 12(f), Fed. R. Civ. P., which prohibits immaterial, impertinent or scandalous matter from inclusion in any pleading;

v.    LRCiv 15.1, which prohibits an amended pleading from incorporating by reference any part of a preceding pleading, including exhibits.

3.    DENYING AS MOOT the Motions to Dismiss filed by Defendants Krasner and Glennie (Doc. Nos. 44 & 45); and

4.    DENYING AS MOOT the Motion for More Definite Statement filed by Defendants Southwest Gas and NPL Construction (Doc. No. 38).

The Magistrate Judge further recommends that Plaintiff be advised that failure to comply with the Court's Order could result in dismissal with prejudice and the imposition of sanctions and/or an award of attorneys' fees to Defendants.

Pursuant to 28 U.S.C. § 636(b), any party may serve and file written objections within 10 days of being served with a copy of this Report and Recommendation. If objections are not timely filed, they may be deemed waived. If objections are filed, the parties should use the following case number: **CV-09-382-TUC-JMR.**

DATED this 5th day of October, 2009.

Jennifer C. Guerin
United States Magistrate Judge

18